# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

PEYMAN MASACHI,

    Plaintiff/Counterdefendant,

v.

ELIAHO RAYHAN, TRUSTEE OF THE
EMR FAMILY TRUST, *et al.*,

    Defendants/Counterclaimants.

Case No. 2:09-CV-01384-KJD-LRL

**ORDER**

    Presently before the Court is Plaintiff/Counterclaimant Peyman Masachi's Motion for Summary Judgment on N&D Partnership's Counterclaim arising from Lucky Kyle 106 (#80/81/82). Counterclaimant N&D Partnership ("N&D") filed a response in opposition (#83/84) to which Masachi replied (#85/86). Also before the Court is Counterclaimant Eliaho Rayhan's Motion to Amend Counterclaim (#58). Masaschi filed a response in opposition (#59) to which Counterclaimant Rayhan replied (#62).

I.  Facts

    This action and counterclaim arise from an investment in ten (10) acres of undeveloped real property in Clark County located at Lake Mead and Lamb in Clark County, Nevada ("the Lake Mead Property"). The Lake Mead Property was purchased on September 30, 2005 for a total of

$2,800,000.00, consisting of $1,400,000.00 in cash and $1,400,000.00 financed by the seller who recorded a deed of trust.  Plaintiff Masachi is a licensed real estate broker who put the Lake Mead Property transaction together and who acted as managing member of Lucky Kyle106, LLC ("Lucky Kyle") which held 72% title to the Lake Mead Property.

Lucky Kyle was registered with the Nevada Secretary of State on February 25, 2003.  On September 18, 2003, Lucky Kyle purchased the Blue Diamond Property.  On September 23, 2005, Lucky Kyle sold the Blue Diamond Property for a net profit of $1,207,955.58.

The proceeds from the Blue Diamond transaction were used in a 1030 tax deferred exchange, to purchase the Lake Mead Property.  Since the proceeds from the Blue Diamond transaction were insufficient to make the $1,400,000.00 cash payment on the Lake Mead Property, Masachi advanced $150,000.00 of his own funds and borrowed $50,000.00 from A&S Group to close the purchase of the Lake Mead Property, until Elie Rachmani and Arden Investments obtained funds from a separate investment to fund the difference.

N&D Partnership is an investor in the Lake Mead Property which held an indirect interest by purchasing a 70% interest in Lucky Kyle.  Joseph Harounian as trustee of JH Family Trust was a 25% member of Lucky Kyle.  Peyman Masachi owned the other 5%.  The managing partner of N&D, Malahie Rayhan, signed an operating agreement ("the Operating Agreement") in December 2005 stating that N&D would own 70% of Lucky Kyle and that Lucky Kyle would own 72% of the Lake Mead Property.  The transaction for the Lake Mead Property occurred as specified in the Operating Agreement.

After signing the Operating Agreement, N&D proceeded to pay its share of loan payments and otherwise participated in the partnership.  The Operating Agreement specified that Masachi was to receive a 5% acquisition fee in the amount of $140,000.00.  Eventually, Masachi received $286,771.55 from escrow to compensate him for his advance of $150,000 and his acquisition fee.  Additionally, Elie Rachmani and Arden Investments invested in the Lake Mead property to fund the

balance of the purchase price.  Rachmani and Arden closed their investment through a separate escrow that closed approximately one month after the Lake Mead Property was initially purchased.

Rachmani and Arden provided an additional $466,500.00 in cash to the Lake Mead Property transaction.  That cash was distributed or credited as follows: 1) $125,000.00 placed into Lucky Kyle's account and used as an interest reserve on the balance of the Lake Mead Property loan; 2) payment of Masachi's $140,000 acquisition fee; 3) repayment of the $50,000.00 loan from A&S Group; and 4) repayment of the $150,000.00 in additional cash that Masachi advanced to close the purchase.

Once the interest reserve was exhausted in early 2007, N&D and other investors were invoiced and paid their proportionate share of the interest payments owed to the seller.  N&D made the payments until late 2008.  In 2009, Malahie Rayhan asserted that she had never authorized the investment in the Lake Mead Property.  N&D ceased making payments towards the note and deed of trust.  Subsequently, the seller foreclosed on the Lake Mead Property.

On July 13, 2009, Masachi filed the present complaint for declaratory relief seeking to have the Court declare his rights under various operating agreements including Lucky Kyle 106, LLC.  On August 17, 2009, Rayhan filed an answer and counterclaim asserting that Masachi was not authorized to enter into the transaction involving the Lake Mead Property and that Masachi acted fraudulently.

II.  Standard for Summary Judgment

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  See Celotex, 477 U.S. at 323.  The burden then shifts to the nonmoving party to set forth specific facts demonstrating a

genuine factual issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).

All justifiable inferences must be viewed in the light must favorable to the nonmoving party. See Matsushita, 475 U.S. at 587.  However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The court need only resolve factual issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant.  See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment).  Evidence must be concrete and cannot rely on "mere speculation, conjecture, or fantasy. O.S.C. Corp. v. Apple Computer, Inc., 792 F.2d 1464, 1467 (9th Cir. 1986). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 248.

III. Analysis

A. Statute of Limitations

Counterclaimant's claims for negligence, breach of fiduciary duty, and constructive fraud must be dismissed because they are barred by the statute of limitations.  Negligence is governed by a two-year statute of limitations and breach of fiduciary duty and constructive fraud are governed by a three-year statute of limitations.  See NRS § 11.190; Nev. State Bank v. Jamison Family P'ship, 801

4

P.2d 1377, 1382 (Nev. 1990)(a breach of fiduciary duty is fraud and therefore the three-year statute of limitations applies).  The statute of limitations will not commence to run until the aggrieved party knew, or reasonably should have known of the facts giving rise to the breach.  See id. at 1383. Malihe Rayhan testified that in late December 2005 or early January 2006 she complained to Masachi about his alleged unauthorized transaction, and that she demanded her money returned at that time.  Therefore, she knew or should have known of the negligence, fraud and breach of fiduciary duty no later than January 2006.  Therefore, she should have filed her claim no later than January 2009.  Instead, she waited until August 17, 2009 in order to assert her claims.  Therefore, the counterclaims involving Lucky Kyle 106 are dismissed.[1]

B.  Ratification

Even if the claims were not barred by the statute of limitations, the Court would still grant summary judgment to Masachi on the claims, because N&D, through managing partner Rayhan, ratified the investment when she signed the Operating Agreement in December 2005 and participated in the affairs of Lucky Kyle until 2009.

> The doctrine of ratification by conduct is similar in application to the principle of estoppel . . . it operates to make the contract legally valid rather than simply preventing a party from challenging the contract's validity.  In addition, it is based on a theory of mutual assent, which does not require the showing of detrimental reliance necessary for estoppel.  "Generally, contract ratification is the adoption of a previously formed contract, notwithstanding a quality that rendered it relatively void and by the very act of ratification the party affirming becomes bound by it and entitled to all proper benefits from it."  Schagun v. Scott Mfg. Co., 162 F. 209, 219 (8th Cir. 1908).

Merrill v. DeMott, 951 P.2d 1040, 1044 (Nev. 1997).  The Nevada Supreme Court has also held that acceptance of the benefit of a contract by shareholders of a corporation amounts to implied ratification of the contract by the corporation.  See European Motors, Ltd. v. Oden, 344 P.2d 195, 197 (Nev. 1959)(citations omitted).  N&D ratified the contract by signing the Operating Agreement memorializing the purchase of the Lake Mead Property, making interest payments for several years,

---

[1]Counterclaimant has voluntarily dismissed its claim for negligence.

setting the listed sales price, and participating in the affairs of Lucky Kyle for several years. Having ratified the contract, it authorized the actions of Masachi and its claims for negligence, breach of fiduciary duty, fraud and conversion must be dismissed. Similarly, the claim that Masachi improperly paid himself an acquisition fee must be dismissed, because it was specifically authorized in the Operating Agreement signed and ratified by N&D.

### C. Motion for Leave to File Amended Counterclaim

Generally speaking, a party may amend their pleadings "as a matter of course" before a responsive pleading has been served. Fed. R. Civ. Pr. 15(a). After that, a party may amend their pleadings "only by leave of the court...[which] leave shall be freely given when justice so requires." Id. In such instances, the Court would balance the strong policy towards permitting amendment versus "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." See Schlacter-Jones v. General Telephone, 936 F.2d 435, 443 (9th Cir. 1991)(quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

However, where the Court has filed a pretrial scheduling order that has established a timetable or deadline for amending the pleadings, the Court will consider proposed amendments under Federal Rule of Civil Procedure 16(b). That rule requires that the schedule for amending pleadings not be modified without a showing of good cause for failure to amend within the time specified in the scheduling order. See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir. 2000). This standard "primarily considers the diligence of the party seeking the amendment." See Johnson v. Mammoth Recreations, Inc. 975 F.2d 604, 608 (9th Cir. 1992). A scheduling order (#12) was issued in this case that set December 18, 2009 as the deadline for amending the pleadings.[2] Therefore, the Court will review the Plaintiff's motion to amend under Rule 16's good cause standard, because the motion was filed well past the deadline set in the discovery scheduling order.

---

[2] A later Amended Discovery Plan was entered after the deadline, but did not purport to extend the deadline to amend the pleadings.

6

The Court must deny the motion to amend the counterclaims, because the motion to amend was filed ten months after the deadline and Counterclaimant has failed to show good cause for failure to amend within the prescribed time.  Furthermore, the Court has dismissed Counterclaimants' claims surrounding Lucky Kyle 106, accordingly amending the Counterclaims to add constructive trust and equitable lien claims surrounding properties purchased from Lucky Kyle 106 proceeds would be futile.  Therefore, the motion to amend the counterclaims is denied.

IV.  Conclusion

Accordingly, IT IS HEREBY ORDERED that Plaintiff/Counter Defendant Peyman Masachi's Motion for Summary Judgment on N&D Partnership's Counterclaim arising from Lucky Kyle 106 (#80/81/82) is **GRANTED**;

IT IS FURTHER ORDERED that  Counterclaimant Eliaho Rayhan's Motion to Amend Counterclaim (#58) is **DENIED**.

DATED this   29   day of September 2011.

_____
Kent J. Dawson
United States District Judge