1

2 **UNITED STATES DISTRICT COURT**

3

4 **DISTRICT OF NEVADA**

5

6

7

| 8 | PEYMAN aka PATRICK MASACHI, an individual, | Case No.: 2:09-cv-1384-KJD-LRL |
|---|---|---|

9

                       Plaintiff,

10 vs.

11 ELIAHO RAYHAN, as Trustee of The EMR
Family Trust; MALIHE RAYHAN, as           **FINDINGS OF FACT**
12 Trustee to The EMR Family Trust; THE      **AND CONCLUSION OF LAW AND**
EMR FAMILY TRUST; BRIAN BAKHANI,          **JUDGMENT**
13 an individual; ARDEN INVESTMENTS LP,
a Nevada Limited Partnership; N & D
14 PARTNERSHIP, a reputed California entity;
JOSEPH HAROUNIAN, Trustee of the JH
15 Family Trust; THE JH FAMILY TRUST; ELI
RACHMANI, as Trustee of the S.E.
16 Rachmani Living Trust; SHARONA
RACHMANI, as Trustee of the S.E.
17 Rachmani Living Trust; THE S.E.
RACHMANI LIVING TRUST; SYRUS
18 RAYHAN and ELAHEH RAYHAN 1994
DECLARATION OF TRUST; DR. SYRUS
19 RAYHAN, as Trustee of Syrus Rayhan and
Elaheh Rayhan 1994 Declaration of Trust;
20 ELAHEH RAYHAN, as Trustee of Syrus
Rayhan and Elaheh Rayhan 1994 Declaration
21 of Trust; ESR HOLDINGS, LLC, a Nevada
Entity; ARDEN DRIVE MANAGEMENT,
22 LLC, a Nevada entity; BELTWAY PRIME,
LLC, a Nevada entity; JACOB and DALIA
23 MARVIZI, individuals,

                       Defendants.
24

25

26

27

28

MALIHE RAYHAN, an individual, N&D
PROPERTY PARTNERSHIP, LP, a
California limited partnership, and The EMR
FAMILY TRUST;

               Counter-Claimants,

vs.

PEYMAN aka PATRICK MASACHI, an
individual; and A&S GROUP, LLC, a
Nevada Limited Liability Company; and THE
EMR FAMILY TRUST,

               Counter-Defendants.

The matter of *Peyman Masachi v. Eliaho Rayhan et al.,* 2:09-cv-1384-KJD-VCF, proceeded to a bench trial on August 28, 2012, the Honorable Kent J. Dawson presiding.

Melanie D. Morgan, Esq. and Gary E. Schnitzer, Esq. of Kravitz, Schnitzer, Sloane & Johnson, Chtd. appeared on behalf of Defendants, Eliaho Rayhan and Malihe Rayhan as Trustees of the EMR Family Trust; and Arden Investments, LP; and Counterclaimants Malihe Rayhan; and The EMR Family Trust and David Mincin, Esq. of the Law Offices of Richard McKnight appeared on behalf of Plaintiff/Counter-Defendant Peyman Masachi.

After hearing the testimony of witnesses and argument by Counsel, the Court hereby makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. Lucky Blue 103, LLC ("Lucky Blue") is a Nevada limited liability company, the ownership of which is held as follows: The EMR Family Trust ("EMR") (52.5%); Arden Investment, LP ("Arden") (40%); Brian Bakhani ("Bakhani") (6.5%); Peyman Masachi ("Masachi") (1%).

2. Lucky Blue was registered with the Nevada Secretary of State on March 30, 2004, and was formed for the purposes of investing in real estate.

3. Although Lucky Blue is not currently governed by an operating agreement, Masachi acted as Managing Member until April 2009.

2

4.  During the period Lucky Blue was experiencing success in its investments, members were willing to accept management on an informal basis, however that changed with collapse of the real estate market in Clark County, Nevada.

5.  In April 2009, members holding 99% of the interests in Lucky Blue appointed Malihe Rayhan as Managing Member.

6.  Masachi refuses to recognize Mrs. Rayhan as Managing Member.

7.  On or about January 18, 2005, Lucky Blue purchased the property commonly known as APN 176-25-301-001 (hereinafter the "Jones & Pyle Property") for $1,200,000 through a 1031 exchange from proceeds realized from a property Lucky Blue previously sold (176-19-301-007).

8.  Although an operating agreement dated March 2005 and concerning the Jones & Pyle Property was prepared, it was not signed by any of the members of Luck Blue.

9.  On March 13, 2006, Lucky Blue entered into a contract and escrow to sell the Jones & Pyle Property to Richmond American Homes ("Richmond American") for $2,150,000. Richard American deposited earnest money totaling $105,000.

10. On January 26, 2006, Masachi's cousin, David Makabi, through his entity DPM Acquisitions ("DPM") entered into a contract to purchase APN 176-30-502-002 from Dianna Lawson for $1,200,000.

11. Also, on January 26, 2006, Masachi, through his entity Ozone, Inc. ("Ozone"), entered into a contract to purchase APN 176-30-501-003 for $1,500,000 from Norbert Aleman.

12. APN 176-30-501-002 and APN 176-30-501-003 are adjoining parcels and are hereinafter referred to as the "Gomer Properties."

13. Masachi purchased his Gomer parcel before Lucky Blue contracted with Richmond American for the sale of the Jones & Pyle Property.

14. On April 20, 2006, Masachi executed an Assignment of Escrow assigning DPM and Ozone's interests in the Gomer purchase agreements to Lucky Blue.

15. Masachi did not adequately inform or obtain consents from the members of Lucky Blue

3

when Lucky Blue took assignment of the purchase agreements for the Gomer Properties.

16. On May 10, 2006, Richmond American cancelled the escrow for the Jones & Pyle Property, but the title company did not release the $105,000 earnest money deposit to Lucky Blue.

17. Masachi retained counsel on behalf of Lucky Blue to pursue recovery of the $105,000 earnest money deposit from Richmond American.

18. In November 2006, Lucky Blue and Richmond American entered into a settlement whereby Richmond American paid Lucky Blue $55,000.

19. Thereafter, Masachi deposited a check for $50,000 in Lucky Blue's account.

20. Although Masachi never consulted any of the other members of Lucky Blue concerning whether Lucky Blue should accept the $55,000 settlement offer, the Court finds it was a reasonable settlement under the circumstances and within his authority.

21. On June 2, 2006, Masachi cancelled the escrows for the Gomer Properties.  As a result, earnest money deposits totaling $60,000 were forfeited to the sellers.

22. On February 5, 2007, Masachi wrote a check for $43,000 from the bank account of Lucky Blue to his entity, Balboa Partnership Group (check no. 1065) with the memo line reading "reimbursement forfeited EMD".

23. Beginning in 2009, Ms. Rayhan became suspicious of Masachi's management of Lucky Blue.  Following some investigation, she learned that Masachi had withdrawn $43,000 from Lucky Blue's account without explanation.

24. On February 25, 2009, Ms. Rayhan sent a letter to Masachi requesting a copy of check number 1065.  Masachi did not provide a copy of the check.

25. Masachi has failed to remit payment totaling $231.08 for his share of fees for accounting services, property taxes, and fees to the Secretary of State since 2009.

## CONCLUSIONS OF LAW

1. In a diversity action, the district court will apply the substantive law of the state in which it sits. 28 USC § 1652.

2. NRS §86.268(1) states: A limited liability company may, but is not required to, adopt an operating agreement.  An operating agreement may be adopted only by the unanimous vote

or unanimous written consent of the members, or by the sole member, and the operating agreement must be in writing.

3.    The March 2005 Operating Agreement is neither valid nor enforceable as it was not signed by any of the members of Lucky Blue, and no vote was taken to adopt the 2005 Operating Agreement.

4.    As there is no valid and enforceable operating agreement, management of Lucky Blue is vested in its members in proportion to their contribution to its capital, as adjusted from time to time to reflect properly any additional contributions or withdrawals by the members.  NRS §86.291

5.    Masachi engaged in self-dealing when he assigned his and Makabi's interests in the Gomer Properties to Lucky Blue without obtaining consents from all members of Lucky Blue.

6.    As a 1% member of Lucky Blue, Masachi is liable for payment of his share of property taxes, accounting fees, and fees to the Secretary of State.

7.    Under Nevada law, the tort of conversion is defined as a distinct act of wrongfully exerted dominion over personal property in denial of, or inconsistent with, title or rights therein or in derogation, exclusion or defiance of such rights. *Winchell v. Schiff*, 124 Nev. 938, 193 P.3d 946 (2008).

8.    Conversion is an act of general intent, which does not require wrongful intent and is not excused by care, good faith, or lack of knowledge.  *Evans v. Dean Witter Reynolds, Inc.*, 116 Nev. 598, 5 P.3d 1043 (2000).

9.    Masachi committed the tort of conversion by taking $43,000 from Lucky Blue's account.

10.   The Federal Declaratory Judgment Act governs the declaratory relief remedies to be afforded to plaintiffs in a diversity action.  *In re USA Commercial Mortgage Co. v. Compass USA SPE, LLC et al.*, 802 F. Supp. 2d 1147; 2011 U.S. Dist. LEXIS 82124 (Nev. 2011).

11.   Masachi is not entitled to a court determination that the $43,000 taken by Masachi was proper.

12.   Masachi is not entitled to a court determination that he is entitled to an additional $13,000 in reimbursements to be funded by the Lucky Blue Defendants.

13.   Counter-Claimants Malihe Rayhan and the EMR Family Trust, representing an interest of 52.5% of Lucky Blue, are entitled to judgment against Peyman Masachi of $22,575 ($43,000 x 52.5%), plus $231.08 as his 1% share of property taxes, accounting fees and fees to the Secretary of State, together with costs.

14.   The remaining members of Lucky Blue did not join in the Counter-Claim and no judgment is awarded those members at this time.

## **JUDGMENT**

**IT IS HEREBY ORDERED** that Judgment is entered in favor of Malihe Rayhan and The EMR Family Trust and against Plaintiff/Counter-Defendant Peyman Masachi in the amount of $22,806.08, together with costs and prejudgment interest.

DATED this 25th  day of September 2012.


_____
Kent J. Dawson
United States District Judge