UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

PEYMAN aka PATRICK MASACHI,

    Plaintiff,

v.

ELIAHO RAYHAN, as Trustee of the EMR Family Trust, *et al*.,

    Defendants.

Case No. 2:09-CV-01384-KJD-VCF

**ORDER**

Presently before the Court is Plaintiff's Renewed Motion for Attorneys' Fees and Costs against Malahie Rayhan and N&D Partnership (#132). Defendants filed a response in opposition (#136/137/140) to which Plaintiff replied (#142).

I. Background

This action and counterclaim arise from an investment in ten (10) acres of undeveloped real property in Clark County located at Lake Mead and Lamb in Las Vegas, Nevada ("the Lake Mead Property"). The Lake Mead Property was purchased on September 30, 2005 for a total of $2,800,000.00, consisting of $1,400,000.00 in cash and $1,400,000.00 financed by the seller who recorded a deed of trust. Plaintiff Masachi was a licensed real estate broker who put the Lake Mead

Property transaction together and who acted as managing member of Lucky Kyle106, LLC ("Lucky Kyle") which held 72% title to the Lake Mead Property.

Lucky Kyle was registered with the Nevada Secretary of State on February 25, 2003. On September 18, 2003, Lucky Kyle purchased the Blue Diamond Property. On September 23, 2005, Lucky Kyle sold the Blue Diamond Property for a net profit of $1,207,955.58.

The proceeds from the Blue Diamond transaction were used in a 1030 tax deferred exchange, to purchase the Lake Mead Property. Since the proceeds from the Blue Diamond transaction were insufficient to make the $1,400,000.00 cash payment on the Lake Mead Property, Masachi advanced $150,000.00 of his own funds and borrowed $50,000.00 from A&S Group to close the purchase of the Lake Mead Property, until Elie Rachmani and Arden Investments obtained funds from a separate investment to fund the difference.

N&D Partnership is an investor in the Lake Mead Property which held an indirect interest by purchasing a 70% interest in Lucky Kyle. Joseph Harounian as trustee of JH Family Trust was a 25% member of Lucky Kyle. Peyman Masachi owned the other 5%. The managing partner of N&D, Malahie Rayhan, signed an operating agreement ("the Operating Agreement") in December 2005 stating that N&D would own 70% of Lucky Kyle and that Lucky Kyle would own 72% of the Lake Mead Property. The transaction for the Lake Mead Property occurred as specified in the Operating Agreement.

After signing the Operating Agreement, N&D proceeded to pay its share of loan payments and otherwise participated in the partnership. The Operating Agreement specified that Masachi was to receive a 5% acquisition fee in the amount of $140,000.00. Eventually, Masachi received $286,771.55 from escrow to compensate him for his advance of $150,000 and his acquisition fee. Additionally, Elie Rachmani and Arden Investments invested in the Lake Mead property to fund the balance of the purchase price. Rachmani and Arden finalized their investment through a separate escrow that closed approximately one month after the Lake Mead Property was initially purchased.

Rachmani and Arden provided an additional $466,500.00 in cash to the Lake Mead Property transaction. Once the interest reserve was exhausted in early 2007, N&D and other investors were invoiced and paid their proportionate share of the interest payments owed to the seller. N&D made the payments until late 2008. In 2009, Malahie Rayhan asserted that she had never authorized the investment in the Lake Mead Property. N&D ceased making payments towards the note and deed of trust. Subsequently, the seller foreclosed on the Lake Mead Property.

On July 13, 2009, Masachi filed the present complaint for declaratory relief seeking to have the Court declare his rights under various operating agreements including Lucky Kyle 106, LLC. Rayhan filed an answer and counterclaim asserting that Masachi was not authorized to enter into the transaction involving the Lake Mead Property and that Masachi acted fraudulently. The Court granted Masachi's motion for summary judgment on the counterclaims and on his claims for declaratory relief on September 29, 2011. Specifically, in the order, the Court found that Rayhan and N&D had ratified the real estate transaction and operating agreement. Litigation on claims surrounding other parties continued through 2012. After the conclusion of the entire action, Masachi timely filed the present motion for attorneys' fees relating to the Lucky Kyle 106 transactions.

II. Analysis

First, to the extent that Defendants Rayhan and N&D argue that they cannot be liable for attorneys' fees and costs, because their was no written agreement authorizing the fees and costs, the Court expressly ruled in the motion for summary judgment that the Operating Agreement had been ratified by the conduct of the parties. Therefore, Masachi may be awarded reasonable attorneys' fees pursuant to the fee-shifting provision of the Operating Agreement. See Nev. Rev. Stat. § 18.010. Second, the award of attorneys' fees and costs will be against N&D only, because it was the party against whom summary judgment was granted.

///
///
///

3

Under Nevada law, the court must determine the reasonableness of the award considering the following factors:

> (1) the advocate's qualities, including ability, training, education, experience, professional standing, and skill;
>
> (2) the character of the work, including its difficulty, intricacy, importance, as well as the time and skill required, the responsibility imposed, and the prominence and character of the parties when affecting the importance of the litigation;
>
> (3) the work performed, including the skill, time, and attention given to the work; and
>
> (4) the result—whether the attorney was successful and what benefits were derived.

Barney v. Mt. Rose Heating & Air Conditioning, 192 P.3d 730, 736 (Nev. 2008). These factors are substantially similar to the factors required by Local Rule 54-16 which the court must analyze in awarding attorneys' fees. Defendant N&D has not disputed that most of the factors favor an award of attorneys' fees. First, Plaintiff achieved a positive result in the Lucky Kyle dispute. More than a million dollars was lost in the Lucky Kyle project. Thus the amount involved was substantial. The novelty and difficulty of the questions involved was typical of this kind of property and business dispute. Real estate transactions gone bad are not unusual in this jurisdiction. Any novelty imposed by the case was caused by Plaintiff's failure to sign the Operating Agreement. The case required the skill that is typically expected of an attorney in this jurisdiction. Counsel concedes that handling this action did not preclude him from accepting other employment. The fixed fee charged by Plaintiff's counsel, $300/hour, is reasonable and customary in this jurisdiction for the kind of litigation that was being conducted. The experience, reputation and ability of the attorneys is commensurate with the work they performed and the fee charged. The other facts do not apply or affect the analysis.

The only objection, other than liability under the Operating Agreement, raised by N&D is the apportionment of fees between the different claims litigated in this action. Masachi discounted the fees for billing entries that involved more than one project by 50% because the declaratory judgment action and counterclaims surrounding Lucky Kyle involved claims that may have run into the millions of dollars whereas the claims surrounding Lucky Blue were in the tens of thousands of dollars. N&D

argues that those billings should be awarded at a one third rate for the Lucky Kyle work (1/3 each for Lucky Blue, Lucky Kyle or the Beltway). The Court finds that Plaintiff is correct in suggesting that the Lucky Kyle claim was worth substantially more in potential liability and damages. The Court finds that dividing fees and costs by 50% for work performed for all claims is reasonable. Further, the Court finds that N&D's objections to the amounts that it claims are completely unrelated at all to the Lucky Kyle litigation are well founded. Therefore, the Court deducts $4,926.25 from the fees sought. However, the Court denies all of N&D's objections to the other fees and costs. Thus, the Court awards Plaintiff attorneys' fees and costs in the amount of $30,245.00.

III.  Conclusion

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Renewed Motion for Attorneys' Fees and Costs against Malahie Rayhan and N&D Partnership (#132) is **GRANTED in part**;

IT IS FURTHER ORDERED that Plaintiff is awarded attorneys' fees and costs against N&D Partnership in the amount of $30,245.00.

DATED this 27th day of September 2013.

_____
Kent J. Dawson
United States District Judge